May it please the court, Kristen Kimmelman for Efren Derma-Dominguez. Mr. Derma challenges his sentencing guidelines calculation on two grounds. The government agrees with one of those grounds and agrees that remand is warranted because the district court used the incorrect base offense level. The remaining disputed issue is whether the district court clearly erred by applying the aggravating rule adjustment a two-level increase to his offense level which also disqualified him from receiving a two-level reduction for safety valve and that was clear error because under the facts as presented by the government Mr. Derma was an average participant in this drug trafficking activity. Is our critical question what to do about Delgado and our precedent or is our critical question the facts in this case just not being sufficient to support the enhancement? At this level the critical question is the facts aren't sufficient to support . . . So we're going we're traveling under clear error? We're traveling under clear error and we are bound by Delgado and the many cases Ochoa Gomez and Warren after Delgado saying we're bound by that precedent that exercising management responsibility is sufficient and that management responsibility has to be over the criminal organizations assets property or activities. Of course that's not what the guideline commentary said but that is what this court said in Delgado was sufficient and as the court is aware it's undisputed that Mr. Derma did not supervise or recruit any management responsibility over the criminal organization's assets inquiry. Now this court has affirmed the enhancement based on the management responsibility when someone is involved in negotiating or planning distributing the drugs also managing complex assets such as bank accounts and technology like websites and calling algorithms but there isn't a case where it has been affirmed on these circumstances and the circumstances the government points to I put into three categories. There's the transporting and possessing the drugs during the time Mr. Derma was transporting the drugs from near the border to the Odessa Midland area. It was a pretty regular route, right, and it was a lot of, it was a pretty high quantity. It was a high quantity of drugs and he did know that the organization did these trips approximately every 15 days. There's evidence that he sort of moved up in the organization, right, he then was reporting to sort of the one of the head guys. Correct, so he shifted departments from alien smuggling which he did six times to prove that he was a trustworthy employee of the organization and then he shifted into transporting drugs and at that point possibly during the humans the alien smuggling also he changed from reporting to the Bolitas, the person in the Midland area, to Saul, the person closer to the border and so there was a shift in who supervised him and what type of contraband he was carrying but his duties remained the same that was transporting. Now doing that he did learn more about the organization because he worked for them for about five months and knowing more about how the organization operates and who the players are that's what takes him out of minor role but minor role, which is that other guideline 3b 1.2 in its commentary, says that someone who transports and stores drugs can still be there must be some daylight between someone who is transporting drugs but can still get mitigating role and certainly the transporting isn't sufficient by itself to support the aggravating role because then there would be no room for someone in that middle ground, the average participant like Mr. Derma. In Delgado, the en banc decision, I know the government points to language that Delgado exercised control over the drugs in the truck and that was a reason for assessing the aggravating role but Delgado also relied on the fact that she had arranged the transportation and the delivery and certainly in her case in Delgado she was exercising control because she was the sole owner of that truck and had actually arranged the entire drug trafficking activity, which is different than Mr. Derma's circumstances. But would you say he was moving up the ladder but he hadn't gotten there yet? So I don't know exactly what the ladder looks like but he had not gotten to the management responsibility yet. He was certainly earning their trust and showing he was a trusted employee but not every trusted employee is also a member of the organization's assets. Could you be like a mid-level manager and qualify for the enhancement? You could be, yes. It's not reserved only for the kingpins or the leaders of the entire conspiracy but there would still need to be some demonstration of management responsibility over assets above and beyond simply moving drugs from one location to another. Mr. Derma . . . It's debatable. Doesn't Ty go to the clear error standard? So clear error is a difficult standard and if it is plausible then the government would get an affirmation at this level of the aggravating role enhancement. But the facts that the government who's had the burden to present at sentencing don't establish enough of a predicate to reasonably infer that Mr. Derma was exercising discretion with regard to the drugs that he was taking at the behest of Saul. On a route Saul told him to go. When Saul told him it was clear for him to try to travel down that road and to a location known by the criminal organization. This is not a case where Derma was a successor to Dessa to decide which street level dealer gets how much of drugs and for how much. Those are the cases . . . that was the case in the unpublished I think Johnson and Hernandez that the government pointed to, someone who had decision making authority at that end point. But there's no evidence that Derma was in a similar situation. If we vacate and remand, I mean it's got to go back on one of them anyway, what's the quality of the evidence remaining that can be adduced below? I mean what else is there and from whom? So I don't know exactly what else would be in discovery to present and the agent already testified at sentencing and didn't offer any additional information and actually clarified that Derma had not recruited or supervised anyone during the activity. The agent and the government appeared to be relying on the theory that by earning more trust and switching from alien smuggling to drugs that showed that he had an aggravating role. But that doesn't, like I said, show that he shifted and increased in responsibilities and discretion and decision making like a manager or supervisor would. The other evidence that the government and more so the PSR addendum points to is that Mr. Derma was staying at trailers where he had previously dropped off non-citizens who he had transported further into the United States. But again, with that evidence, all we know is that he was staying at those trailers when non-citizens were there because he was dropped off, no evidence of management responsibilities and the PSR does not establish and neither did the agent that drugs were kept in those trailers. And of course, he was convicted of a drug trafficking offense for this conviction and so there's not enough evidence that the trailers were even being used for drugs. Indeed, he did not get a two-level increase for maintaining a premises of a place where drug distribution occurs and so that would also suggest that the sleeping at the trailers, essentially getting room and board for the work he had done for the organization is not sufficient to show that he had exercised management responsibilities in the sense that this court has interpreted for the guideline enhancement. If the court has no further questions, I've reserved time for rebuttal. All right. Thank you. I think we're hearing the argument. Mr. Durbin. Good morning. You and I both have a lot of tread on our tires. It's very, very thin. Well, it's just for those that just didn't know, Mr. Durbin has been in the government for a while. I recognize you even underneath the beard. Thank you, Judge. Good to see you again. Good to be here. May it please the Court, Richard Durbin for the United States. I think counsel makes a very good argument for a finding that it would be plausible that he was not a manager, but I think the evidence also supports the district court's finding. I think this is probably one of those cases where either finding would be plausible on this record. I look at the cases that the parties have cited and they're all factually unique. They have a number of circumstances and if I can boil them down, I think they boil down to these kinds of factors and form the managerial responsibility over assets, property, or the organization or the activities. The courts look at the relationship to the contraband, what the defendant's ownership, possession is and so forth. The means of transport, the means of storage, the means of distribution where it's a contraband. A couple of the cases look at IT, basically what is IT infrastructure, whether they're using computers, if they're using spreadsheets and that sort of thing. That clearly doesn't apply here. The means of financing the operation, which isn't here. The extent of profits that the defendant takes and the individual's position in the organization. I don't think any single one of these controls, but I think if you look at those here in this case, the factors give the district court's interpretation or the district court's finding plausibility and that is the following. Derma possessed the SUV. He was driving it. He was in control of it. He was transporting a substantial amount of drugs. There were two types of drugs that were involved. One was I think 400 plus pounds of marijuana, plus he had about six ounces of methamphetamine. Not entirely clear, I'm going to come back to the methamphetamine, not entirely clear whether that was part of the organization or he was on his own, but he was exercising apparently some kind of individual control over that. There's some others . . . What happened to the drugs when he got to his destination? Remind me. We don't know. He didn't get to his destination? So counsel opposite mentioned that there's no evidence that he controlled them or directed where they went or was anything other than a transport vehicle, right? So talk about what evidence supports the idea that he was actually exercising some volition if that's what's required? The . . . What happened to the . . . There is . . . She very accurately states there's no . . . and I've looked. If it's in there, I cannot find it, but there is no evidence that says where he was storing the drugs or who he was handing them off to. What the information in there establishes is that when he started transporting aliens, he was taking aliens to an RV trailer controlled by somebody named Bolitas. I infer that's where he would leave the aliens. He says that he was living in trailers of the organizations. When he moved his position closer to Saul, or Saul, who was over Bolitas and the defendant and then basically Bolitas, as Ms. Kimmelman phrases it, he changed departments. He also moved closer to Saul. He was now directly under answering to Saul. An indication in the testimony, I think the implication of the testimony of the agent at the sentencing hearing was he was moving up. He was increasing his trust. He was moving up in the organization. Well, you heard my question of the counsel opposite. Was he moving up? I guess from her standpoint, he hadn't gotten there yet. Obviously, the government's . . . What do we put our finger on that he got there? He's moving up. I think that the inference is that him living in those trailers, I think the district court could infer that it's very likely that's where the marijuana was stored until it was distributed to somebody else. It's not stated. He never said that, but I think that's a fair inference reading the entire record and what the practice was with the aliens. Was that the tipping point for the district court? I mean, I read it, but I don't . . . I don't know that there was any single tipping point. I think the district court was looking at those circumstances. I think it was important to the district court, the testimony that he was moving up in the organization. I don't know that the district court specifically found where he was at that point, whether he was a manager in training, whether he was a sub-manager. I don't think it's fair to say he was a mid-level manager. I don't think there's any support for that as you had . . . Well, I'm not even sure what that is. I'm not really . . . I'm not either. . . . . in the organization board charts, but . . . And the guideline says we don't have to characterize that. Those are just sort of indicators of how you get to the conclusion of what is . . . whether his role takes him out of being an average participant. The real question here, is it not, is whether he had some sort of managerial capacity over the contraband that he was transporting on a regular basis. Over the properties of the criminal organization, and he had . . . Passed over the properties, right? And he had possession of the means of distribution, both the SUV, as well as the means of transport, as well as the means of storage and distribution, that is the trailers. But if just having the means is enough, how do you delimit where management responsibility ends, and it may not be a minor role, but it's not . . . it's kind of in between as the opposite was discussed. It is, and I think, but on this circumstance, I think that the inferences that the district court drew are plausible in light of the record. Additionally, what he had was, there were photos of him in his phone in those trailers with firearms and ammunition, and he had in the SUV, two magazines of AR-15 ammunition, I think totaling about fifty-eight rounds. Now, the district court didn't discuss it, but in my mind, that implies that he also had some role in protecting the assets of the organization, and so that puts him again into these sort of multi-level or multi-layer responsibilities. He also is the one who authorized the search of those trailers, indicating that he at least believed he had some ability to do things with respect to the property and the assets. How do we characterize it? Again, we don't put the label mid-level manager. We don't know what that is, so we don't really label it. We just do as the district court. I mean, sort of stack the inferences, so to speak, or as mentioned, no clear error? Well, I think that's what it boils down to, is under the circumstances, the district court didn't clearly err. You could reach a different conclusion on these facts, but that doesn't mean that the conclusion that the district court . . . which the district court, as I interpret or read the sentencing transcript, he thought about it. He asked those questions. He was inquiring. He was inquisitive, and I think that's where his judgment came out. Like I say, under the clear error standard, I think that he could have found differently, and I think that would have been sustainable too, but I think that the district court's finding in this instance was plausible given the record as a whole. Well, assuming, and I don't say that the panel is going there, but that's the valuable argument, just to test the theories, got agreement on the other error, so we're sending it back anyway. Okay. That's my stronger argument. I'll tell the court that's a stronger argument. I think that if it goes back, it goes back for the court to make a determination whether or not the safety valve applies. I don't think the district court made that determination. In fact, specifically what I see in there is the district court has . . . You're on that second point. I'm on that second point. All right. Well, hold what you got right there. That wasn't exactly where I was going. Oh, okay. I'm sorry. I was going to get there. No, I was just assuming for the thought, since it's going back, albeit for a totally separate purpose on the second one, but assuming that . . . well, you know, it's closed, maybe there's no clear or whatever, but it's going back anyway. It's a tweener. A question the same that I asked the counsel opposite, the agent testified, so beyond what the district court found, what other evidence would there be? I know your argument is that no need to do that, but I'm just trying to . . . what other evidence would there be beyond what he already testified to, et cetera, et cetera? Would it be a matter of the district court just changing its mind, do you follow what I'm saying? Is there other evidence or another source that he didn't already know? I don't know the answer to that. I don't know whether there was further investigation, whether there was something that led eventually to Saul, and we now know things that we didn't know at the time. That's possible, but I don't . . . I can't represent to the court that there is any likelihood of there being any more evidence than what's on this record. Okay. That was just, you know, sort of a curiosity question. I know the agent testified. Sometimes it's a matter because of the nature, so he just doesn't ask him a question. There was no reason to, but there might have been something there that assuming it went back, but if not, but that's fine. I mean, that answers my question. If you want to shift to the other point . . . I was just going to say, I think that the question of safety valve is a not resolved question, particularly because the district court had some difficulties or some problems with Mr. Derma's various stories of what he was involved in. When he was originally stopped, he denied that he was involved in it, denied ownership of the meth or the marijuana. Then he told agents that, well, he was threatened, which was the reason that he was transporting the drugs, and then he eventually came around and admitted that he was smuggling drugs and had successfully smuggled aliens. As the district court said, I guess that's the third story. We're going to land on that one maybe, except then he challenged the methamphetamine being included in the drug quantity, saying that he had a meth addiction, which contradicted his claim to the probation officer that he had no substance abuse issues. I think on the issue of the safety valve, it's an open question that the court hasn't resolved yet and that it's not one for this court to resolve at this time. That's pretty much what I have to offer the court, unless you have some  Thank you very much. Thank you, sir. On that safety valve point, it would make sense for that to go back to the district court. I know we also said this court could decide that because the government conceded below that he had been truthful to satisfy safety valve and it appeared he satisfied the other factors, but deciding safety valve on remand would also be appropriate to air out some of those issues. So of course, would be deciding aggravating role is something that the the agency has to be involved in, as we said before, with this court's guidance. The agent was asked at sentencing why does he merit an enhancement for leader, manager, organizer, supervisor and the response all had to do with his increased trust in the organization. There was not a focus on the trailer. I would say that's because the agent had no information that the drugs were used. That's a fairly obvious thing to mention. As I said before, the PSR does not establish that the trailers had any role to play with the drugs. Instead . . . . . . Well, to be sure, you'd have a tougher path if this was like so many, we get no objection and it's clear error. Here, if you had an objection, but it's clear error. As Mr. Durbin said, if it's fair to say to the district court, kind of sort it through. All of what you're saying, maybe it could have gone the other way. It didn't. Why? How do we . . . I mean, how is it clear error, given . . . I mean, if the district court sorts it, weighs it, comes to a conclusion based on it, without hanging a label on it, he's a middle level manager, blah, blah, blah, but because of his proximity with the drugs, et cetera, et cetera, et cetera, it's not at the bottom. I mean, what's the articulation of the clear error, as opposed to well, we looked at it, we would have done something different, you see what I'm saying? I mean, like, you know, what do we tell the district court? Well, we know you thought about this hard, but think about it again. I think there are two aspects of the clear error. What I'm suggesting is that the district court was operating under an incorrect understanding of what exercising management responsibility is, because there was this focus on him earning trust, which is not enough. The government argues for physical possession. The guideline does not at all mention physical possession as being a criteria for the aggravating role, and there was no discussion at sentencing about exercising management responsibility, either in the PSR or by the government or the agent at sentencing. And so while that may sound like a bit of a legal argument, I think that is what happened here. There was not the proper lens to look at that evidence. The other aspect is, especially with a clear understanding of what the standard is for aggravating role, is that there is too much piling of inference upon inference. We have to assume that the drugs were going to the trailer, and then we have to assume that he had some sort of management over it. He had pictures of himself with firearms at some point that are in the trailer, so we're going to assume that he is using those to somehow protect the organizations. These network fact finders do connect inferences from evidence. There's nothing impermissible about it, right? So there still has to be a sufficient factual predicate to make those reasonable inferences. And if it's too many inferences upon each other, that's when I think it gets into something that is implausible and does satisfy the clear error review, so that the court can have another opportunity to look at the evidence with a better understanding of what that standard for aggravating role is. If there are no further questions, we ask the court to vacate and remand for resentencing. Thank you both. Thank you, Ms. Kuhlman. Thank you, Mr. Durbin. Appreciate it from the government. The case will be submitted and we'll sort it out.